Wahineloaaole and Waihowale *v.* J. Kapoohiwi.

## SUPREME COURT—IN BANCO.

### JULY TERM, 1882—IN EQUITY.

*Judd, C. J., and McCully, J. (Austin, J., dissenting),*

WAHINELOAAOLE AND WAIHOWALE *vs.* J. KAPOOHIWI.

#### ON APPEAL.

A BILL IN EQUITY was brought to compel the defendant to accept payment of a mortgage and surrender the premises, which alleged mortgage was in the form of a deed and a separate defeasance deed. A majority of the Court found that the defeasance was fraudulent and rendered judgment for the defendant.

Opinion of a majority of the Court by McCULLY, J.

Bill in equity is brought to compel the defendant to accept payment for a mortgage and surrender the premises. The alleged mortgage is in the form of a deed absolute, marked Exhibit A, and a separate defeasance deed marked Exhibit B. The question before us is one of fact, to determine upon conflicting testimony, whether or not the second paper was procured by fraud and executed by mistake; whether both parties intended a deed absolute or a mortgage: The evidence with its variations may be epitomized as follows: Wahineloaaole derived this land by descent from one Nawai. The defendant Kapoohiwi was related to the same Nawai and had made some claim to the land in question, and was living on it and cultivating a part of it, but on the day of the transaction we are considering, 29th or 30th of June, 1879, he signed a declaration, Exhibit F, to the effect that he had no lawful claim thereto, and surrendered it to Wahineloaaole who had been found sole heir of Nawai, by the Probate Court.

The other plaintiff, Waihowale, comes in on a deed of the

premises from Wahineloaaole of a subsequent date, 25th October, 1879. On the day in question the principal plaintiff with his lawyer, D. Kahaulelio met the defendant with his lawyer, J. W. Kalua, to transact some business about the land.

The testimony of D. Kamaiopili and of Wahineloaaole is that the purpose of the parties was to mortgage the land to defendant, and that the mortgage was effected by the absolute deed A, followed by the defeasance deed B, and that both these instruments were executed at the same time and in the presence of all parties.

The testimony of the defendant and Kalua is that the proposition was for a mortgage but that the defendant refused to take such, that a mortgage deed which had been drawn up by the plaintiff's lawyer Kamaiopili was thereupon destroyed, and the plaintiff consented to sell. The defendant being without means thereupon left the company and shortly returned, saying he had "shipped" or contracted to labor with one Cummins for three years and had received $100 in advance, which he produced. That the deed A was then written, executed by the plaintiff and endorsed attorneys for the two parties Kalua and Kamaiopili. That then Thomas Birch, agent to take acknowledgment of deeds, was sent for, and meantime Kalua went away for half an hour. That after Kalua left them, Kamaiopili drew another paper which he professed to read to defendant. The defendant has been nearly blind for ten years. That Kamaiopili said to him it was a paper of no consequence "he mea ano ole" and procured his signature. This paper which is the defeasance deed B, is not witnessed, acknowledged or recorded. That presently Kalua returned in company with Mr. Birch. That Kamaiopili handed the deed A to Birch who read it aloud and took the plaintiff's acknowledgment.

Now upon the testimony so far we give credit where there is a disagreement to the evidence for the defendant upon such considerations as these.

Wahineloaaole and Waihowale *v.* J. Kapoohiwi.

Premising that is an unusual way for accomplishing the purpose of a mortgage, and especially so among Hawaiians, who, however, are acquainted with mortgages in the common form, it is highly improbable, we may say incredible, that the defendant, Kapoohiwi, not having money to lend, should put himself under the bondage of contract service for three years to procure money to lend on interest for a year or any length of time. We believe that, although the plaintiffs wanted to mortgage, the defendant refused, and that the plaintiff then consented to sell.

The price, $100, is shown to have been at that time not greatly inadequate to the value.

No reason is pretended to be shown why the second instrument was not witnessed as the first had been.

The first instrument is carefully drawn and at full length. The second is brief and evidently hasty.

The whole is consistent with the case of the plaintiff, and his attorney having failed to raise money by a mortgage, then fraudulently seeking to convert the absolute deed into a conditional one. The subsequent conduct of the interested parties confirms this theory.

On the return of Kalua the deed A is produced, but nothing is said about the defeasance B. We have seen that it was not acknowledged. And nothing further is heard of it till the following October when the plaintiff sells the land to Waihowale (co-plaintiff) and proceeds to tender the principal and interest for a year to the defendant. Meantime the defendant had remained in possession of the alleged mortgaged premises, although he had surrendered them by exhibit F, had expended $200 in placing a house on the land, and had filled the land with a crop of taro. The defendant who admits that he signed some instrument on the representation of Kamaiopili, denies that he knew its purport in fact, and his legal adviser knew nothing of it. They refuse to accept the money. The whole conduct of the defendant is consistent with the testi-

66

mony on his behalf, that the transaction was a sale of the land and the defeasance a fraud.

We give judgment for the defendant.

W. R. Castle for plaintiff.

W. O. Smith for defendant.

Honolulu, August 18, 1882.

OPINION OF MR. JUSTICE AUSTIN APPEALED FROM.

This is an action brought to redeem a mortgage.

It is not disputed that an absolute deed in form was made for the consideration of $100 of land at Wailuku, Maui, on or about the 29th day of January, 1879, by the plaintiff, Wahine-loaaole, to the defendant, and that at the same time or before the parties separated, a defeasance was signed by defendant, and delivered to the plaintiff Wahineloaaole, whereby it was declared that the said deed should be of no effect if $100 should be paid to the defendant with interest at two per cent. a month on the 29th day of January, 1880; but if not so paid that then the said deed should remain in full force. By all the authorities the deed and defeasance above described, if properly executed, were substantially a mortgage.

It was further proved that $124—the amount referred to in the defeasance—was duly tendered to the defendant on the day therein specified and he refused to receive the same, claiming the title to the land under the deed.

A deed was proved to have been duly made to the plaintiff, Waihowale, by his co-plaintiff. These facts entitle the plaintiffs to the relief they seek unless the defeasance was executed by mistake or fraud.

The preponderance of proof showed, I think, that the land in question was worth considerably more than $100.

In such a case the tendency of Courts of equity is to construe the transaction to be a mortgage.

The deed was witnessed and acknowledged and the defeas-

ance was not. This fact, however, does not invalidate the defeasance as between the parties to it.

Examination of the signature to the defeasance shows that it was deliberately written. The defendant swears that he was deceived, and was told that the paper was of no importance by the plaintiff's attorney, and that it was drawn after Kalua, his attorney had gone away; and that his eyesight was defective, and he did not read it nor know its contents. This is corroborated by Kalua, but on the other hand the plaintiff and the man who drew the deed and defeasance say the defendant knew all about it, and that his attorney was present. When tender was made of the money, before the time it was due, two witnesses in substance say, and it is not disputed, that the defendant said: "Let it be until the time for which it calls is up." This would seem to show that the defendant knew the contents of the defeasance when he signed it.

The interest secured by the defeasance is very large, 24 per cent. a year. As said by the plaintiff's counsel the defendant may have believed that if the money was not actually paid on the day agreed the deed would stand, and that he had a great chance of keeping the land.

I have considered all the points ingeniously presented by the defendant's counsel. The case is not without difficulty, but, on the whole, I think the preponderance of evidence is in favor of the plaintiffs.

The redemption may be made as prayed for, upon payment of the sum of $124, the amount tendered; and let a decree be entered for the surrender of the premises and the satisfaction of the mortgage, in accordance with the prayer of the bill.

Dated June 21, 1882.

———

DISSENTING OPINION BY AUSTIN, J.

I feel constrained to dissent from the opinion of the majority of the Court in this case. Referring to my opinion on file in the Court below, I still adhere to the conclusions then

reached for the reasons therein stated, and add, that at the trial by the testimony of the defendant, and the manner of giving it, I was convinced that even if it were true that the defeasance was executed in the absence of Kalua, the attorney for the defendant, at all events it was executed deliberately and with a full understanding of its contents, and so the circumstances, otherwise strongly indicating fraud, fell to the ground. It was apparent that the defendant was very anxious to secure a title to the property in question. The defeasance is in form of a conditional deed. It may be, as said below, that the defendant believed that, by the failure to pay promptly the money secured, the plaintiff would lose his land.

If he so thought, it would be a mistake of law, on account of which the defendant would be entitled to no relief.

I think the judgment should be affirmed.